## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **LAWRENCE PATRICK PHILLIPS** ) | |
| **AIS #243212,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.:** |
| ) | **1:20-cv-270-CG-N** |
| **LT. MCKENZIE,** ) | |
| ) | |
| **Defendant.** ) | |

## SPECIAL REPORT

**COMES NOW**, the Defendant, Lt. Brandon McKenzie (who has since been promoted to Captain), through undersigned counsel, and in accordance with this Court's orders of September 10, 2020, (Doc. 10); and November 10, 2020 (Doc. 14) hereby submits the following Special Report.

## PARTIES

1. Plaintiff, Lawrence Patrick Phillips, ("inmate Phillips"/"Phillips") is an Alabama Department of Corrections ("ADOC") inmate who was incarcerated at Holman Correctional Facility ("Holman") in Atmore, Alabama at all times material to this case. He is currently incarcerated at Limestone Correctional Facility.

2. Defendant, Lt. Brandon McKenzie ("Lt. McKenzie"), is currently employed with ADOC as a Correctional Captain at Holman.

1

# OVERVIEW

This case is based on one (1) incident of self-defense that occurred on September 25, 2019 at Holman around 12:00 noon or 12:05 p.m. (Ex. A, Institutional Records, Incident Report, p.2; also see Use of Force Report, p.6). At that time inmate Phillips angrily lunged at Lt. McKenzie near a glass window. (Ex. A, Institutional Records, Incident Report, p.2; also see Use of Force Report, p.6). Lt. McKenzie reacted to Phillips' aggression by using his left elbow to protect himself and push inmate Phillips away, and they then collided with a glass window nearby. (Ex. B, Lt. McKenzie's Affidavit). At that time Lt. McKenzie was only trying to prevent any physical harm to himself and attempting to gain control of this situation. (Ex. B).

Inmate Phillips was promptly treated at Holman's Health Care Unit at 12:10 p.m., transported to Atmore Community Hospital at 12:46 p.m. for stiches and returned to Holman and placed in Holman's Hospital Ward the next day, on September 26, 2019. (Ex. A, Incident Report p.2; Ex. C, Certified Medical Records). And, although inmate Phillips wrongly attempts to blame additional injuries and medical treatment he received after this in 2019 on the September 25, 2019 incident, Phillips' additional injuries and treatment are from unrelated incidents that occurred on September 30, 2019, October 30, 2019 and/or on December 21, 2019. (Ex. D, Supplemental Institutional Records, Incident Reports). For instance, on September 30, 2019, inmate Phillips re-injured himself by running head first into a door to try to avoid being placed in Holman's Restricted Housing Unit. (Ex. D, Incident Report dated 9/30/2019).

2

And, on October 30, 2019, inmate Phillips had to be transported to an outside facility for medical treatment for his jaw and lip, because Phillips was "jumped by two or three unidentified inmates". (Ex. D, Incident Report dated 10/30/2019).

### INMATE PHILLIPS' ALLEGATIONS

Inmate Phillips alleges that on or about September 26, 2019[1] Lt. McKenzie told him to pack up all of his belongings and move from Holman's "A" dorm and that he, inmate Phillips, asked to see Captain Smith about this move. (Doc. 4, p. 8). Phillips claims his request to see Captain Smith purportedly angered Lt. McKenzie who in response to Phillips' request allegedly slapped Phillips and said pack up. (Doc. 4, p. 8). Inmate Phillips then told Lt. McKenzie that he, Phillips, was not moving until he saw Captain Smith. (Doc. 4, p. 8). Phillips alleges that Lt. McKenzie then ordered that he be restrained in handcuffs behind his back. (Doc. 4, p. 8). Phillips further alleges that while he was being escorted to the shift office, Lt. McKenzie was verbally abusive. (Doc. 4, p. 8). When they arrived at the shift office, inmate Phillips claims that he again asked to see Captain Smith. (Doc. 4, p. 8). Inmate Phillips claims that Lt. McKenzie purportedly responded to his request to see Captain Smith by allegedly first pushing his head through a window, and then snatching his head out of the window and allegedly throwing him to the floor. (Doc. 4, p. 8). As a result of this alleged incident, inmate Phillips had to be taken to a free world hospital for treatment. (Doc. 4, p. 8).

---

[1] The incident occurred on September 25, 2019 according to the Incident Report, Body Chart and Medical Records.

As noted above, inmate Phillips' injuries and medical treatment can also be attributed to other incidents. Nevertheless, inmate Phillips is attempting here to blame all his injuries and medical treatment on the September 25, 2019 incident and for alleged excessive force he is suing Lt. McKenzie in his individual capacity for $900,000 in compensatory damages and $900,000 for punitive damages. (Doc. 4, p.10). Inmate Phillips appears to be suing for an additional 1 million dollars in compensatory damages and 2 million dollars in punitive damages for alleged wanton infliction of physical pain and mental anguish and suffering from all injuries. (Doc. 4, p.10). And, inmate Phillips is also suing Lt. McKenzie for the sum of 1 million in compensatory damages and 2 million dollars in punitive damages for alleged deliberate indifference to his immediate need for medical assistance. (Doc. 4, p.10).

## DEFENDANT'S EXHIBITS

1.   Exhibit A -   Certified Institutional Records;

2.   Exhibit B -   Lt. McKenzie's Affidavit;

3.   Exhibit C –   Redacted Certified Medical Records; and

4.   Exhibit D -   Supplemental Institutional Records.

## STATEMENT OF FACTS

On September 25, 2019, Lt. McKenzie was assigned as the institutional Rover for the B days shift at Holman. (Ex. A, Incident Report, p.2). At approximately 11:53 a.m. on September 25, 2019, Lt. McKenzie entered Dormitory B due to inmate Phillips being rehoused from Dorm B to Dorm A. (Ex. A, p.1; Ex. B, Affidavit of Lt. McKenzie). Lt. McKenzie approached inmate

Phillips, informed him that he had been reassigned from Dormitory B to Dormitory A, and instructed inmate Phillips that he needed to gather his personal property and come with Lt. McKenzie to Dormitory A. (Ex. A, p.2; Ex. B). Inmate Phillips stated that he was not moving anywhere. (Ex. A, p.2; Ex. B). Lt. McKenzie informed inmate Phillips to exit the dormitory with him and to come to the shift commander's office. (Ex. A, p.2; Ex. B).  Inmate Phillips refused. (Ex. A, p.2; Ex. B). Inmate Phillips stated, "if you want me to move, make me move!" (Ex. A, p.2). Inmate Phillips insisted that if Lt. McKenzie wanted him to move, that Lt. McKenzie would have to force him to move. ( Ex. B). As inmate Phillips continued to refuse Lt. McKenzie's lawful commands, Lt. McKenzie reached out and grasped inmate Phillips by Phillips' right arm and attempted to assist inmate Phillips to his feet to escort inmate Phillips from the dormitory. (Ex. A, p.2; Ex. B). Inmate Phillips responded by snatching his arm away from Lt. McKenzie very aggressively and grasping Lt. McKenzie in his chest area, by Lt. McKenzie's stab vest. ( Ex. A, p.2; Ex. B). Lt. McKenzie was able to remove the grasp that inmate Phillips had on Lt. McKenzie's stab vest in the chest area, by removing inmate Phillips' hands from his vest. (Ex. A, p.2; Ex. B). Lt. McKenzie and Officer McQuirter were then able to restrain inmate Phillips on inmate Phillips' bed. (Ex.  A, p.2; Ex. B).

Lt. McKenzie then proceeded to escort inmate Phillips from the dormitory and up the main hallway towards the shift office. (Ex. A, p.2; Ex. B). Inmate Phillips became irate and stated to Lt. McKenzie in a loud voice, "Let me go

n.....!". (Ex. A, p.2; Ex. B). Inmate Phillips then turned towards Lt. McKenzie and lunged in Lt. McKenzie's direction. (Ex. A, p.2; Ex. B).

Lt. McKenzie reacted to inmate Phillips' aggressive movement by using his left forearm to push inmate Phillips away to protect himself from any physical harm. (Ex. A, p.2; Ex. B). As Lt. McKenzie pushed inmate Phillips away from him, they collided with a glass window that was placed in the infrastructure on that hallway. (Ex. A, p.2; Ex. B). As the glass window broke, inmate Phillips fell to the floor. (Ex. A, p.2; Ex. B). All force ceased. (Ex. A, p.2; Ex. B).

Lt. McKenzie and Officer Jones immediately assisted inmate Phillips to Phillips' feet and escorted Phillips to Holman's Health care Unit where Phillips was medically assessed by an LPN and treated at 12:10 p.m. for several lacerations. (Ex A, Body Chart, p.5). Lt. McKenzie also received a medical assessment and was treated for minor cuts and scratches. (Ex A, Incident Report, p.2).

A medical doctor gave orders to have inmate Phillips transported to an offsite medical facility for stitches. (Ex A, Incident Report, p.2). At approximately 12:46 p.m., ambulance services departed with inmate Phillips to Atmore Community Hospital. (Ex A, Incident Report, p.2). Inmate Phillips was returned to Holman the next day at approximately 7:00 p.m. (Ex A, Incident Report, p.2). A registered nurse conducted a return assessment on inmate Phillips at approximately 7:20 PM. Inmate Phillips was secured onto the patient ward. (Ex A, Incident Report, p.2). Disciplinary action was brought against

inmate Phillips for failure to obey a direct order of an ADOC employee and an assault on persons associated with ADOC. (Ex. A, Incident Report, p.2).

At no time did Lt. McKenzie act with any malicious intent, nor did Lt. McKenzie utilize any unreasonable amount of force. Lt. McKenzie only acted in a manner to prevent any bodily harm to himself. (Ex. B). Lt. McKenzie did not intentionally cause any bodily harm to inmate Phillips. (Ex. B). That was never Lt. McKenzie's intention. (Ex. B). Lt. McKenzie reacted to inmate Phillips' aggression and was simply trying to prevent any physical harm to himself and attempt to a gain control of the situation. (Ex. B). Lt. McKenzie fully denies all of the complaints against him. (Ex. B).

The Use of Force investigating officer found that the force used was justified. (Ex. A, Use of Force Report, p.6). The investigating officer found that inmate Phillips refused to comply with all orders given. (Ex. A, Use of Force Report, p.6). And, that it was not until force was used that inmate Phillips complied with the orders given. (Ex. A, Use of Force Report, p.6). The investigating officer determined that Lt. McKenzie used the reasonable amount of force to gain control of the incident. (Ex. A, Use of Force Report, p.6).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact as in the case at bar. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). The Defendant has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the

Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  See Buskey v. Harsco Corp., 2000 WL 1196158, *1 (S.D. Ala., 2000) citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); and Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).   Where, as in the case at bar, the Defendant has established that there is no genuine dispute, the burden shifts to the non-movant, inmate Phillips, to rebut the movant's prima facie showing.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Unless the non-movant, inmate Phillips, can submit substantial evidence that a genuine issue of material fact does exist, the Defendant is entitled to summary judgment. Id.

## LEGAL ARGUMENT

### Eighth Amendment: Excessive Force

In Hudson v. McMillian and Whitley v. Albers, the U.S. Supreme Court set the standards under which an Eighth Amendment excessive force claim must be analyzed.  To succeed in proving correctional officers' use of force was unconstitutional, a plaintiff must show: (1) that subjectively, the defendants acted maliciously or sadistically to cause harm to the plaintiff; and (2) the plaintiff suffered injury that was objectively harmful enough to establish a constitutional violation. Hudson v. McMillian, 503 U.S. 1, 8 (1992).  In making this determination, the Court considers the following five factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relation between the need for force and the amount of force actually used; (4) the threat

reasonably perceived; and (5) any efforts to temper the severity of a forceful response.  Whitley v. Albers, 475 U.S. 312, 321 (1986).

### Subjective Component

In order to establish that a correctional officer acted with a sufficiently culpable state of mind, the plaintiff must show that force was applied "maliciously and sadistically to cause harm," amounting to an "unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 320 (1986).  On the other hand, if "force was applied in a good faith effort to maintain or restore discipline," then the officers acted correctly and there was no constitutional violation.  Hudson v. McMillian, 503 U.S. 1 (1992).

Inmate Phillips cannot show that, subjectively, Lt. McKenzie acted maliciously or sadistically to cause him harm.  The use of force investigating officer, Captain Smith found that the force used was justified. (Ex. A, p.6, Use of Force Investigative Report).  As noted in the Report, inmate Phillips refused to comply with all orders given. (Ex. A, p.6). Lt. McKenzie used the reasonable amount of force to gain control of the incident. (Ex. A, p.6).

Lt. McKenzie fully denies all of the complaints against him and testified via his affidavit that at no time did he act with any malicious intent, nor did he utilize any unreasonable amount of force. (Ex. B). Lt. McKenzie further testified that he did not intentionally cause any bodily harm to inmate Phillips. (Ex. B). Lt. McKenzie testified that he reacted to inmate Phillips' aggression and was simply trying to prevent any physical harm to himself and also attempting  to gain control of the situation. (Ex. B). Since any alleged force was

clearly "applied in a good faith effort to maintain or restore discipline," Lt. McKenzie acted correctly and there is no constitutional violation. <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992). Thus, inmate Phillips' excessive force claim is without merit.

### <u>Eighth Amendment: Alleged Failure to Provide Immediate<br>Medical Assistance</u>

Inmate Phillips alleges that Lt. McKenzie knew or should have known that he was in need of immediate medical assistance after his face was cut from allegedly being "smashed" into the glass window, but that he instead purportedly threw him on the floor where there was broken glass. (Doc 4, p. 10). Inmate Phillips further alleges that Lt. McKenzie failed to seek immediate medical attention and assistance for his "emergency need". (Doc. 4, p. 10). Inmate Phillips' allegations are without merit. Furthermore, the record reflects that inmate Phillips was promptly escorted to Holman's Health Care Unit and shortly thereafter transported to Atmore Community Hospital. And to the extent inmate Phillips is claiming that he allegedly did not receive adequate medical treatment, his claim fails.

Every claim by a prisoner that he has not received adequate medical treatment does not state a violation of the Eighth Amendment. <u>McElligott v. Foley</u>, 182 F. 3d 1248, 1254 (11th Cir. 1999). The courts have devoted an extraordinary amount of time in clearly defining the requirements for asserting and succeeding upon an Eighth Amendment claim under § 1983. Both the Supreme Court and the Eleventh Circuit have described the Eighth Amendment

standard of deliberate indifference as requiring allegations and evidence of both "objective" and "subjective" components. <u>See e.g.</u> <u>Farmer</u>, 511 U. S. 825 at 834-837; <u>Vincent v. Crosby</u>, 379 F. 3d 1278, 1289-90 (11th Cir. 2004).

The "objective" component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment. <u>See Hudson v. McMillan</u>, 503 U.S. 1, 8 (1992). The underlying conduct or condition must be "extreme" and pose "unreasonable risk of serious damage to his future health," if left unchecked. <u>Vincent</u>, 379 F. 3d at 1289-90 (<u>quoting Hudson</u>, 503 U. S. at 9) (other citations omitted). At a minimum, inmate Phillips must allege and establish the existence of "a serious medical need." <u>Vincent</u>, 379 F. 3d at 1289-90; <u>Farrow v. West</u>, 320 F. 3d 1235, 1243 (11th Cir. 2003). The Eleventh Circuit's longstanding definition of "serious medical need" is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>See e.g.</u> <u>Farrow</u>, 320 F. 3d at 1243 (<u>citing Hill v. DeKalb Reg'l Youth Det. Ctr</u>., 40 F. 3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)). Additionally, the serious medical need must be such that, if left untreated, "Pos[es] a substantial risk of serious harm." <u>Farmer</u>, 511 U. S. at 834. The burden falls squarely upon inmate Phillips to allege and ultimately establish the existence of a serious medical need. <u>See e.g.</u> <u>Hamm v. DeKalb Co</u>., 774 F.2d 1567 (11th Cir. 1985).

Furthermore, a prisoner's § 1983 claim for inadequate medical treatment cannot survive summary judgment unless and until inmate Phillips produces evidence of the alleged medical condition and an "intentional refusal to provide . . . care." Campbell v. Sikes, 169 F. 3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shaw, 87 F. 3d 1266, 1269 (11th Cir. 1996); Hill, 40 F. 3d at 1186). Without evidence of this "specific intent," inmate Phillips' § 1983 claim cannot succeed. Steele, 87 F. 3d at 1269. Based on the record, inmate Phillips cannot meet the elements necessary to establish this claim.

**Sovereign Immunity and Eleventh Amendment Immunity**

To the extent inmate Phillips may have sued Lt. McKenzie in his official capacity, Lt. McKenzie, as a state official, is absolutely immune from suit for damages in his official capacity. Walker-El v. Naphcare Med. Servs., Inc., 432 F.Supp.2d 1264, 1268 (S.D. Ala. 2006) citing Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998). The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment therefore not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizenry. See Edelman v. Jordan, 415 U.S. at 663, 94 S. Ct. at 1347 and Hans v. Louisiana, 134 U.S. 1, 13-15, 10 S. Ct. 504 (1890). The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest. See Pennhurst State

School & Hospital v. Halderman, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). If Lt. McKenzie is named in his official capacity, this suit is in reality a suit against the State. Lt. McKenzie is also entitled to sovereign immunity pursuant to § 14 of the Alabama Constitution of 1901. Thus, Lt. McKenzie is absolutely immune from damages liability and the claims against him in his official capacity are due to be dismissed.

## Qualified Immunity and State-Agent Immunity

Lt. McKenzie, in his individual capacity, is also immune from suit by virtue of qualified immunity and state-agent immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). As explained infra, Lt. McKenzie's acts or omissions have not violated any established constitutional or statutory rights. Further, the alleged acts or omissions of Lt. McKenzie consist of discretionary functions, and because his actions do not violate any clearly established constitutional or statutory rights, he is protected by qualified

13

immunity.  <u>Pinkney v. Davis</u>, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity).  The Eleventh Circuit has also held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Wilson</u>, 163 F.3d at 1295. Accordingly, inmate Phillips' claims are due to be dismissed.

## <u>CONCLUSION</u>

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-250 (1986). This case is ripe for summary judgment because there is no genuine issue of fact as to the Plaintiff, inmate Phillips' claims and the Defendant is entitled to judgment as a matter of law.

Respectfully submitted this 9th day of December 2020.

STEVE MARSHALL
ATTORNEY GENERAL


/s/ MARY GOLDTHWAITE
MARY GOLDTHWAITE
Assistant Attorney General
Counsel for Defendant Lt. McKenzie

OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL  36130
(334) 353-9189
(334) 242-2433 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2020, I electronically filed the foregoing Special Report with the Clerk of the Court, using the CM/ECF system, and that I have further served a copy on the Plaintiff, by placing same in the United States Mail, postage prepaid, and properly addressed as follows:

Lawrence Patrick Phillips
AIS #243212
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL 35749-7009

/s/ MARY GOLDTHWAITE
OF COUNSEL