IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LAWRENCE PATRICK PHILLIPS | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | CIVIL ACTION NO. 1:20-270-CG-N |
| | ) | |
| LIEUTENANT BRANDON McKENZIE., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Lawrence Phillips, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendant's' motion for summary judgment.[1] (Doc. 18). For the reasons discussed herein, it is ordered that this motion be granted, in part, and denied, in part.

**I.   BACKGROUND AND FACTUAL ALLEGATIONS**[2]

**A.   Complaint.**[3]

---

[1]   The Court converted the Defendant's Answer and Special Report to a motion for summary judgment. (Docs. 15, 16).

[2]   The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[3]   Plaintiff's initial § 1983 complaint (Doc. 1) was not on this Court's form. Plaintiff was ordered to complete and file this Court's form for a complaint under 42 U.S.C. § 1983. (Doc. 3). Plaintiff was informed that the new complaint would supersede his prior complaint and was advised not to rely on his prior complaint. (*Id*.). In compliance with the Court's order, Plaintiff filed his complaint on this Court's form, and it is this complaint which is considered the operative complaint in this action. (Doc. 4).

In his complaint, Plaintiff Phillips alleges that, while incarcerated at Holman Correctional Facility, Lieutenant Brandon McKenzie used excessive force against him and delayed him medical treatment in violation of the Eighth Amendment. Plaintiff is suing Lieutenant McKenzie in his individual and official capacity for compensatory and punitive damages.[4]

Plaintiff Phillips alleges that on September 26, 2019, he was instructed by Lieutenant McKenzie to pack his belongs and move from A-Dorm. Phillips asked why he was being moved but Lieutenant McKenzie gave no answer, and Phillips requested to speak with Captain Smith. Lieutenant McKenzie responded, "I don't give a f--- who you want to see or talk to" and slapped Phillips and said, "you punk a-- motherf--- I said pack up!" (Doc. 4 at 8). Phillips then refused to move until he could speak with Captain Smith. In response, Lieutenant McKenzie ordered that Phillips be placed in restraints. Phillips claims he was escorted to the shift office (with his hands cuffed behind his back) by Lieutenant McKenzie (who Phillips maintains was verbally abusive). Before entering the shift office, Phillips again asked to see Captain Smith and Lieutenant McKenzie pushed Phillips' head through a window and snatched it back out, throwing Phillips to the floor.[5] Phillips claims he blacked out and lost consciousness for a few minutes. Phillips further claims he sustained multiple deep cuts and abrasions to his face and head, necessitating emergency medical treatment at a local hospital. From there, Phillips asserts he was transported to the University of South Alabama Medical Center in Mobile, Alabama where it was determined he had

---

[4]  Phillips requests $900,000 in compensatory damages and $900,000 for punitive damages for alleged excessive force. (Doc. 4 at 10). Phillips also requests 1 million dollars in compensatory damages and 2 million dollars in punitive damages for alleged wanton infliction of physical pain and mental anguish and suffering, as well as 1 million in compensatory damages and 2 million in punitive damages for alleged deliberate indifference to his need for medical treatment. (*Id*.).

[5]  Plaintiff asserts there is video evidence to substantiate his claim. (Doc. 1 at 8; Doc. 1-1 at 5; Doc. 4 at 10).

bleeding on his brain and received plastic surgery on his jaw. Phillips claims he suffers memory loss, nightmares, anxiety, and post-traumatic stress from the incident.

**B.     Defendant's Answer and Special Report.**

Defendant McKenzie has answered Plaintiff's suit, denying the allegations asserted against him, and submitted a Special Report in support of his position.[6] (Docs. 15, 16). Defendant McKenzie maintains that the forced used against Phillips was in self-defense and that Phillips received immediate medical care for sustained injuries. (Doc. 16 at 2).

According to Defendant McKenzie, on September 25, 2019, he was assigned as the institutional rover for the B days shift at Holman. At approximately 11:53 a.m., he entered B-Dorm to move Phillips to A-Dorm. When he instructed Phillips to gather his personal items, Phillips stated that he was not moving anywhere, exclaiming "if you want me to move, make me move!" (Doc. 16 at 5). McKenzie asserts he reached to grasp Phillips' right arm and attempt to assist Phillips to his feet to escort him from the dormitory, but Phillips responded by snatching McKenzie's arm away from him and grasping McKenzie's chest area, by McKenzie's stab vest. McKenzie removed Phillips' hands from his vest and with the assistance of Officer McQuirter, Phillips was placed in restraints and escorted from B-Dorm. (Doc. 16 at 5).

During the escort, "Phillips became irate and stated to Lt. McKenzie in a loud voice, 'Let me go n…..!'" (Doc. 16 at 5-6). Phillips then lunged in McKenzie's direction and McKenzie reacted, using his left forearm to push Phillips away. As McKenzie pushed Phillips away, they collided with a glass window that was in the hallway, breaking the glass. Phillips fell to the floor

---

[6] Defendant McKenzie has further asserted all available immunity defenses and challenged Plaintiff's entitlement to punitive damages pursuant to the limitations under 42 U.S.C. § 1981a. (*See* Doc. 15).

and all force ceased. (Doc. 16 at 6). McKenzie and Officer James assisted Phillips to his feet and immediately escorted him to the health care unit, where he was assessed and treated for several lacerations. The medical doctor then gave orders to have Phillips transferred to a local medical facility for stitches. According to Defendant, Phillips was transported via ambulance to Atmore Community Hospital and returned to Holman the next day. Phillips received a disciplinary action for failure to obey a direct order of an ADOC employee and assault on persons associated with ADOC.[7] (Doc. 16 at 6-7).

McKenzie avers that he never intended to cause harm to Phillips but only acted in a manner to prevent bodily harm to himself and to gain control of the situation. (Doc. 16-2). McKenzie further insists that "although inmate Phillips wrongly attempts to blame additional injuries and medical treatment he received [that beyond stitches] after this in 2019 on the September 25, 2019 incident, Phillips' additional injuries and treatment are from unrelated incidents that occurred on September 30, 2019, October 30, 2019 and/or on December 21, 2019." (Doc. 16 at 2). As part of his Special Report, Defendant has put forth these, respective, Incident Reports which reflect the following:

On September 30, 2019, the record reflects that as Phillips was being escorted from the hospital ward to be processed into the Restrictive Housing Unit, he stated, "I ain't going to lock up" and ran head-first into the shift office door, causing a laceration to his left eye. (Doc. 16-7 at 2). Phillips attempted, again, to run into the door but was stopped by Officers Hudson and Earl. Phillips was taken to the health care unit where he informed the nursing staff, "I hit my head on the door", "I don't feel comfortable in this prison", "I ain't did shit", and "I'm not going to SEG". (Doc. 16-3 at 105; 16-7 at 4). Phillips suffered a laceration to his left eye and the "area to (R) jaw and (R) side" were "reopened". (Doc. 16-3 at 105).

---

[7] Defendant maintains that the I&I investigation determined that the use of force was justified due to Phillips' failure to comply with orders given. (Doc. 16-1 at 6). An unsigned copy of the I&I investigation report has been submitted (*see id.*); however, no disciplinary report reflecting charges or hearing findings has been produced. Notably, the record evidence is not clear that Phillips disobeyed direct orders after he was restrained in handcuffs or that he was aggressive or threatening.

On October 30, 2019, the record reflects that Phillips was "jumped by three unidentified inmates" in B-Dorm. (Doc. 16-7 at 6). He was transported to an outside medical facility where he received treatment for a laceration to his right cheek and inner lower lip. (Doc. 16-3 at 101-102; Doc. 16-7 at 6). Phillips received a CT scan of his head and face (Doc. 16-4 at 10-11) and treatment for his lacerations. (Doc. 16-4 at 21; Doc. 16-5 at 4, 35).

On December 21, 2019, the record reflects that Phillips was observed fighting with another inmate. (Doc. 16-7 at 9). After refusing orders to stop fighting, Phillips was sprayed with one burst of chemical agent, handcuffed, and taken to the health care unit for decontamination. (*Id.*; Doc. 16-3 at 97).

Defendant's answer and special report has been converted by the court into a motion for summary judgment (Doc. 18).

C.   **Plaintiff's Response to Defendant' Motion for Summary Judgment.**

In response to the Defendant's Motion for summary judgment, Plaintiff disputes that Lieutenant McKenzie's actions were justified or asserted in self-defense. (Doc. 20 at 2). Phillips reiterates that (while handcuffed) McKenzie "smashed his face through a glass window and then power [drove] his head to a concrete floor" and further asserts that the incident was captured on videotape, on the hallway surveillance camera, and requests that the video footage be produced by Defendant.[8] (*Id.*).

Plaintiff Phillips has also produced the affidavit of inmate Matthew Sullivan, who swears under penalty of perjury, that he was present in Holman's B-Dorm on September 25, 2019 and

---

[8] In response to the motion, Plaintiff has filed a Request for Admissions. (Doc. 21). The pleading is essentially a request for production of the alleged video camera footage and the I&I investigation report regarding the incident subject of this complaint. While Plaintiff was entitled to serve this request on Defendant without leave of court (*see* Fed. R. Civ. P. 26(d)(1)), he has not moved the court to compel responses since serving the request. However, the Court determines such response is not necessary for Plaintiff to adequately respond to Defendant's motion for summary judgment. Namely, Defendant did produce (as part of his Special Report) the I&I investigation report (*see* doc. 16-1 at 6), and for purposes of summary judgment, the court accepts the sworn statements of Plaintiff disputing any material facts of the incident as true.

witnessed the incident subject of this action.[9] (Doc. 20-2). Sullivan declares that he "trailed" Phillips as he was taken to the shift office. Sullivan affirms that he "could see Lt. McKenzie let Officer McQuirter take Phillip to shift the rest of the way while he go across the hall for something. Officer McQuirter must told inmate Phillip to stand facing the shift office window, moment later Lt. McKenzie come back from across the hall way and slams Phillip into the window snatches him out of the window and takes him down on the floor." (*Id*.).

After thorough review of the record, it is determined that this motion for summary judgment is ripe for consideration.

## II.   MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

---

[9]   Inmate Sullivan is currently housed in Limestone Correctional Facility. (Doc. 20-2).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" Id. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of

the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

### III. DISCUSSION AND ANALYSIS

#### A. IMMUNITY DEFENSES.

To the extent Plaintiff attempts to sue Defendant in his official capacity (as a correctional lieutenant of a state prison) and seeks any type of monetary award, the defendant is entitled to absolute immunity from suit, as official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Id*., quoting in large measure *Lancaster v. Monroe Cnty*, 116 F.3d 1419, 1429 (11th Cir. 1997). Accordingly, Lieutenant McKenzie, employed by the State of Alabama, is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429.

As to the allegations asserted against Defendant in his individual capacity, Defendant asserts that she is entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden,* 936 F3d 1227, 1232 (11th Cir. 2019) (citation omitted).

While there is no doubt that the Defendant in this action was acting within his discretionary authority at all times when the acts in question occurred, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). As to the remaining claim, that Defendant delayed him medical treatment, the Defendant is entitled to qualified immunity unless Plaintiff can show that his conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *See Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395 (11th Cir. 1994). Therefore, the Court will now address whether this action identifies any constitutional violation.

### B. Claims Under 42 U.S.C. § 1983.

Plaintiff Phillips proceeds pursuant to 42 U.S.C. § 1983. "In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). There is no dispute that the named Defendant, as an employee of the Alabama Department of Corrections, is a state actors for purposes of this action. Thus, to establish his asserted claims, Plaintiff must establish that the named defendant, personally, acted to deprive him of a constitutional right.

#### 1. Excessive Force.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. *Campbell v.*

*Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). In order to establish an Eighth Amendment excessive force claim against the defendant, Plaintiff must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted); *see also Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience"). Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). While not every "malevolent touch" by a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth Amendment if it "is not of a sort repugnant to the conscience of mankind." *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (noting that an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim) (internal quotation marks and citation omitted). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id*. at 38.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.Ed.2d 156). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."

> *Hudson*, 503 U.S. at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skirtch v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002). Accordingly, in determining whether or not force used was excessive, relevant factors include the "need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Notably, prison officials "acting to preserve discipline and security" are given "broad deference" when evaluating whether force used was excessive or not. *Pearson v. Taylor*, 665 F. App'x 858, 863-64 (11th Cir. 2016).

The disposition of Defendant's motion for summary judgment regarding Plaintiff's September 25, 2019, excessive force claim turns on the "core judicial inquiry", "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37. Here, Defendant disputes Plaintiff's account of what occurred on September 25, 2019, arguing that the force used was in self-defense and that Plaintiff's claimed injuries were due to unrelated and later occurring incidents,[10] and Plaintiff maintains he did not lunge at Defendant and that video evidence exists to support his version of the facts.[11]

---

[10] No doubt, "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennet v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Specifically, force may be used against a prisoner who fails to comply with the direct orders of an officer. *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal citation omitted).

[11] Plaintiff Phillips has asserted that the incident was captured by the hallway surveillance camera (*see* Docs. 1, 4, 7, 20, 21), which Defendant has neither confirmed or denied.

The record evidence shows that on September 25, 2019, Plaintiff suffered multiple lacerations and cuts to the right side of his body, requiring further treatment at Atmore Community Hospital, where he received facial and head CT scans. (Doc. 20 at 7; Doc. 16-4 at 44, 75, 76). The record also confirms that Plaintiff was admitted to University of South Alabama Medical Center the same afternoon and through September 26, 2019, for further medical treatment, including sutures, staples, CT scans, and a neck brace. (Doc. 16-4 at 37, 59-112). The medical records from University of South Alabama Medical Center state in relevant part:

> Patient from Atmore s/p confrontation/assault where pt's head was 'pushed through the window and his body followed' + LOC. Stapled lacs to R Hip, sutured lacs to R elbow, and lacs to R face/neck OTA, AAOx4 OA
>
> . . .
>
> [Phillips was] thrown through a ground-floor window at Atmore prison with positive loss of consciousness. Patient present to UH with laceration to his face, right arm and hip. Outside facility CT head/brain showed a 4 mm punctate hemorrhage in the left temporal lobe posteriorly patient was transferred for higher level of care. Patient currently complains of midline neck tenderness with numbness that radiates into his bilateral upper extremities into his hands including all fingers that occurred after the incident. . . .

(Doc. 16-4 at 37). The record confirms that Phillips returned to Holman on September 26, 2019 at approximately 7:30 p.m. and was released from the prison's infirmary on September 29, 2019. (Doc. 16-4 at 59; Doc. 16-3 at 66, 69). Thus, the record supports that Plaintiff required emergency medical treatment after losing consciousness and suffering a brain bleed due to the incident in question.

The record reflects that on October 21, 2019, a Referral Request was completed by the doctor at Holman for a neurological follow up for:

> Traumatic left sided intracerebral hemorrhage with loss of consciousness 9/26/19, following BM that went through window with + Loss of consciousness, pt was found to have a 4 mm punctate hemorrhage in left temporal lobe

(Doc. 16-4 at 19). Subsequent CT scans of Phillips' face and head were performed following an October 30, 2019 inmate-on-inmate attack. (Doc. 16-7 at 6; Doc. 16-4 at 10-11). The facial CT scan, dated October 30, 2019, was compared to the September 25, 2019 scan and states, "Mild swelling of the right face related to injury from 9/25/19 is noted as are few tiny superficial foreign bodies." (Doc. 16-4 at 10). Likewise, the CT scan of Phillips' head states, "As before, there is a small focus of increased attenuation of the left posterior temporal periventricular white matter, consistent with a tiny focus of acute hemorrhage. This finding is unchanged or perhaps 1-2 mm larger than the prior study. No new area of hemorrhage. No mass effect or midline shift. No hydrocephalus. . . . No acute skull fracture is seen." (Doc. 16-4 at 11). Thus, the record supports that the brain and facial injuries suffered by Phillips were sustained on September 25, 2019, and not thereafter, as argued by Defendant.

As to Plaintiff Phillips' claim that he required plastic surgery to his jaw, the record is less clear. It is evidenced that Phillips' jawline was healed, and jawline sutures were removed on November 4, 2019. (Doc. 16-3 at 36). However, it is not obvious from the record at what date the sutures were placed – although the body chart from September 30, 2019 reflects that the area to Phillips' right jaw and right side were "reopened" (doc. 16-3 at 105; doc. 16-7 at 4), indicating that such injuries were sustained on September 25, 2019. Consequently, the record does not confirm or belie Plaintiff's claim that he required surgical repair to his jawline following the incident subject of this suit.

Currently, the court is faced with two opposing versions of the incident in question. If Defendant is credited, then the force used was applied to restore order and cannot be determined as excessive. If Plaintiff's version of the incident is credited, then a reasonable fact finder could determine the force used as excessive in violation of the Eighth Amendment. In attempt to carry

his summary judgment burden, Plaintiff has pleaded that video camera footage exists to support his claim (while Defendant has not responded to Phillips' attempt to obtain a copy of the video, neither has Defendant denied the existence of a surveillance camera in the shift office hallway); he has denied lunging at Lieutenant McKenzie, and he has produced the affidavit of an eyewitness. At this procedural stage, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1139-40 (11th Cir. 2007)(citing *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986) ("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied.")); *Kingsland v. City of Miami*, 382 F.3d 1220, 1227 (11th Cir. 2004), *cert. denied, De Armas v. Kingsland*, 543 U.S. 919, 125 S. Ct. 80, 160 L. Ed. 2d 203 ("The plaintiff's word is merely countered by the defendants' testimony. Given the standard of review at the summary judgment state, we must accept [Plaintiff's] version of the facts as true.) (citing *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002)).

> When competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. *See Felicinano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). Indeed, if "the only issue is one of credibility," the issue if factual, and a court cannot grant summary judgment. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996).

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020). Given that the Plaintiff's facts are "sufficiently supported by evidence of record," *Sconiers*, 946 F.3d at 1263, a reasonable jury could conclude based on such facts that Defendant used force against Plaintiff and that the force was applied maliciously and sadistically to cause harm, rather than in a good faith effort to restore or

maintain order.[12]

Accordingly, Defendant's motion for summary judgment should be **DENIED** as to this claim, at this time.

### 2.    Delay of Medical Treatment.

As to Plaintiff's claim that he was denied or delayed medical treatment by Defendant in violation of the Eighth Amendment, his claim fails.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  The Eighth Amendment claim has two components, as previously laid out, both an objective and subjective component. *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).  The objective component inquires as to "whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, [] inquires whether the officials acted with a sufficiently culpable state of mind." *Sims*, 25 F.3d at 983 (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d (1992)).  To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "'one

---

[12]   Although not determinative of this motion for summary judgment, the undersigned pauses to note that the mental pain and anguish described by Plaintiff (i.e., memory loss, nightmares, anxiety, and post-traumatic stress from the incident) is less supported by the record.
  Plaintiff Phillips filed this suit on May 4, 2020 (*See* Doc. 1), and the record reflects it was not until May 5, 2020, that Phillips first complained of headaches, memory loss and bad dreams following having head slammed through window by Lt. McKenzie at Homan and loss of sleep." (Doc. 16-3 at 90).  Furthermore, Phillips did not complain to mental health professionals of decreased sleep, nightmares, etc. until May 29, 2020, and in fact denied "psychological distress" or symptoms of depression or anxiety, on February 20, 2020. (Doc. 16-5 at 62, 67).

that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr*., 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 n. 9 (2002)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (internal quotation marks and citation omitted).

"Delay in access to medical attention can violate the Eighth Amendment ... when it is tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187 (internal citations and quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious."
> An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Id*. at 1188-89 (internal citations omitted) (footnotes omitted).

Here, Defendant has put forth evidence that the incident in question occurred at approximately 11:53 a.m., on September 25, 2019. (*See* Doc. 16-1 at 2-4). The medical records reflect that Phillips was examined in the health care unit at approximately 12:10 p.m., on September 25, 2019 (*Id*. at 5) and was taken to Atmore Community Hospital at 1:00 p.m., on

September 25, 2019, where he received a CT scan at approximately 1:52 p.m, on September 25, 2019. (Doc. 16-5 at 1; Doc. 16-4 at 44). Thereafter, he was taken to University of South Alabama Medical Center, where he received further medical treatment, before returning to Holman's infirmary on September 26, 2019, as previously discussed. There is simply no evidence of record to suggest that Phillips was denied or delayed medical care. Indeed, the record confirms the opposite. Nor has Plaintiff Phillips alleged nor does the record show that his injuries were worsened in any way by any delay.

Consequently, the record belies Plaintiff's claim that Defendant was deliberately indifferent to a serious medical need, and it is recommended that Defendant be **GRANTED** summary judgment on this claim.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that summary judgment should be **DENIED** in favor of Defendant as to the Eighth Amendment excessive force claim and **GRANTED** as to the Eighth Amendment delay of medical care claim.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in

accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

  **DONE** this the _20th_ day of July 2021.

           /s/ Katherine P. Nelson
           **UNITED STATES MAGISTRATE JUDGE**